Diana BASTON, et al., Appellants,

v.

The CITY OF PORT ISABEL,
et al., Appellees.

No. 13–00–550–CV.

Court of Appeals of Texas,
Corpus Christi.

Feb. 15, 2001.

Rehearing Overruled April 26, 2001.

William Schmidt, Law Offices of William Schmidt, Austin, for appellants.

Mauro Fernando Ruiz, Ricardo J. Navarro, Denton, McKamie & Navarro, Harlingen, for appellees.

BEFORE: Justices DORSEY, HINOJOSA, and CASTILLO.

## OPINION

CASTILLO, J.

Appellants, Diana Baston, and the survivors of Nieves Valadez Garcia, deceased, filed a wrongful death action against appellees, the City of Port Isabel, Texas, Nellie Fernandez and Randy Farrell, claiming that appellees' negligent use of an electrocardiograph (EKG) machine contributed to the death of Nieves Valadez Garcia. The City and the individual defendants filed a plea to the jurisdiction, claiming sovereign immunity barred the suit. The trial court

granted the plea, finding that appellants' pleadings did not raise any claims which would fall within any exception to the Texas Tort Claims Act. Appellants bring this interlocutory appeal complaining that the trial court erred in granting the plea to the jurisdiction.[1] We agree and reverse the judgment of the trial court.

### Factual Background

Appellants filed a petition claiming that the City's Emergency Medical Services Department responded to a call for assistance to Nieves Valadez Garcia at approximately 12:59 a.m. on October 11, 1997 and placed an electrocardiograph monitor on her. Appellants alleged that the machine indicated that the decedent was suffering from cardiac problems but that the paramedics misinterpreted its reading. They also asserted that the machine utilized could not be used to "rule out" cardiac problems but that the paramedics used it for this purpose. Appellants claimed in their pleadings that paramedics informed the decedent that she had no cardiac problems but rather was suffering from heartburn. They further asserted that the paramedics did not transport her to a facility and did not urge immediate medical treatment. Garcia died later that morning.

### Sovereign Immunity

The operation of an emergency ambulance service by a governmental unit is a governmental function. TEX.CIV.PRAC. & REM.CODE ANN. § 101.0215(a)(18)(Vernon Supp.2001). Governmental actions are immune from suit and liability under the doctrine of sovereign immunity and thus a government may not be sued for the negligence of its employees in reference to emergency ambulance services unless such negligent actions fall within a statutory waiver of immunity. *City of El Paso v. Hernandez*, 16 S.W.3d 409, 414 (Tex. App.—El Paso 2000, pet. denied). Where no exception exists to sovereign immunity, dismissal is required. *Liberty Mut. Ins. Co. v. Sharp*, 874 S.W.2d 736, 739 (Tex. App.—Austin 1994, writ denied). Governmental immunity defeats a trial court's jurisdiction and is therefore properly raised by way of a plea to the jurisdiction. *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 637 (Tex.1999).

In determining whether to grant a plea to the jurisdiction, a trial court ordinarily must look only[2] to the allegations in the plaintiff's pleadings, without determining their merits, to see whether any of the raised claims support its jurisdiction. *Caspary v. Corpus Christi Downtown Mgmt. Dist.*, 942 S.W.2d 223, 225 (Tex.App.—Corpus Christi 1997, writ denied). Subject matter jurisdiction is a question of law to be reviewed *de novo*. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998), *cert. denied*, 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999). The role of a reviewing court then, where no evidence was considered by a trial court, is to examine the pleadings, taking the facts pled as true, and determine whether those facts support jurisdic-

---

1. This Court has jurisdiction to hear an interlocutory appeal from the grant or denial of a plea to the jurisdiction by a governmental unit pursuant to TEX.CIV.PRAC. & REM.CODE § 51.014(a)(8) (Vernon Supp.2001).

2. The Texas Supreme Court has recently held that where the reception of evidence is necessary for resolving the question of jurisdiction, a trial court may hear and consider such evidence. *The Bland Independent School Dis-*

*trict et al. v. Douglas Blue and Carolyn Blue*, 34 S.W.3d 547, 555–56, 2000 Tex. LEXIS 106 at *20–23 (December 7, 2000). The Court cautioned, however, that an evidentiary hearing on a plea to the jurisdiction should not be used to determine issues that could be determined from the pleadings or to require that the plaintiff essentially try his case in order to establish jurisdiction. *Id.* No evidence was heard in the present case.

tion in the trial court. *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993); *UTMB v. Hohman*, 6 S.W.3d 767, 771 (Tex.App.—Houston [1st Dist.] 1999, pet dism'd).

A limited waiver of governmental immunity has been established by the Texas Legislature in the Texas Tort Claims Act. *See* Tex.Civ.Prac. & Rem.Code §§ 101.001 –101.109 (Vernon 1997 & Supp. 2001) Under such act, a governmental unit in the state may be sued and is liable for negligent actions taken in the course of a governmental function if they fall within one of the exceptions to the Act.[3]

## Discussion

In the present case Appellants argue that the question of whether the use or misuse of an EKG constitutes a waiver of liability under the tangible personal property exception of the Texas Tort Claims Act is governed by the the the Texas Supreme Court's decision in *Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30 (Tex. 1983). In *Salcedo*, the supreme court found that governmental immunity under the Texas Tort Claims Act had been waived in the case of the use or misuse of an EKG, specifically in the negligent reading and interpreting of the electrocardiogram graphs, which was the proximate cause of Evarado Salcedo's death. *Id.* at 33. Appellants also cite to *Texas Med. Branch Hosp. at Galveston v. Hardy*, 2 S.W.3d 607 (Tex.App.—Houston [14th Dist.] 1999, pet. denied), which involved the use or misuse of a cardiac monitor, and which relies on *Salcedo,* as further support for their argument.

Appellees argue that the present case does not involve the use or misuse of tangible personal property, but rather the use or misuse of information. They cite to *UTMB v. York*, 871 S.W.2d 175 (Tex.1994), and cases derived therefrom. We are not persuaded. *York* and its progeny are easily distinguishable. The cases appellees cite all involve either the use, misuse or non-use of information, such as that contained in records or manuals, and such information was not the proximate cause of the claimed injuries. The cited cases hold that information is an intangible entity and placing information on a written page or in a computer does not make the information tangible property nor does it make the use of the written page or computer to collect or communicate information a use of tangible personal property. *Cherry v. Texas Dept. of Criminal Justice*, 978 S.W.2d 240, 242–43 (Tex.App.—Texarkana 1998, no pet.). While we agree that use, misuse or non-use of information does not waive governmental immunity under § 101.021(2) (*see City of Hidalgo Ambulance Service v. Lira*, 17 S.W.3d 300, 304 (Tex.App.—Corpus Christi, no pet.)), we disagree that such holding is applicable to the case in review.

We have held that the word "use", in the context of the Texas Tort Claims Act, means to "put or bring the property into action or service; to employ

---

**3.** Specifically, Tex Civ.Prac. & Rem.Code § 101.021 (Vernon 1997), provides that a governmental unit in the state is liable for:

1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
  (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

  (B) the employee would be personally liable to the claimant according to Texas law; or

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

for or apply to a given purpose." *Lira,* 17 S.W.3d at 304–05. The present case directly involves the alleged use or misuse of tangible personal property (an EKG) in the very purpose for which it was intended to be used—the diagnosis of cardiac problems for appropriate treatment—and negligence in such use or misuse, causing inappropriate treatment which results in injury or death, and therefore constitutes a permissible cause of action under the Texas Tort Claims Act. *See Hardy,* 2 S.W.3d at 610. Indeed, the *York* court recognized the distinction between the use of medical records and the use of medical diagnostic equipment by specifically distinguishing its case from that in *Salcedo,* stating that an electrocardiogram is unquestionably tangible personal property and that *Salcedo* involved the misuse of hospital device or equipment, unlike the use of information claims before the *York* court. *York,* 871 S.W.2d at 178. Similarly, in *Texas Youth Com'n v. Ryan,* 889 S.W.2d 340 (Tex.App.—Houston [14th] 1994, no pet.), which involved a claim of the misuse of diagnostic tests and evaluations, the reviewing court distinguished *Salcedo* and noted that the electrocardiogram machine directly affected Salcedo and its primary purpose in preventing a heart attack was thwarted by the misuse of the machine's graphs which brought about the very end it was meant to prevent. *Ryan,* 889 S.W.2d at 344. We agree with the courts in *York* and *Ryan* that the use or misuse of an EKG is distinguishable from the use or misuse of information.

Appellees also argue that *Salcedo* can no longer be relied upon in light of the holding of *Dallas County v. Bossley,* 968 S.W.2d 339 (Tex.1998), and certain amendments to the Texas Tort Claims Act. They also argue that *Salcedo* is limited to its facts. As to *Salcedo*'s alleged demise, we disagree. The basic premise for which the appellants cite *Salcedo* is that the use or misuse of an EKG for the purpose of diagnosing and treating cardiac problems is a tangible use of personal property which falls under the § 101.021(2) exception to the Texas Tort Claims Act. That is still a viable statement of the law in this State and has not been overruled by any court or affected by legislative action. *See York,* 871 S.W.2d at 178; *Hardy,* 2 S.W.3d at 610; *Ryan,* 889 S.W.2d at 344. The court in Bossley criticized a misinterpretation of *Salcedo* by the court of appeals below, set out the correct interpretation of *Salcedo,* and did not address the question of whether an EKG or its graphs would constitute tangible personal property.[4] *Bossley,* 968 S.W.2d at 342. In limiting *Salcedo* to its facts, the *Bossley* court cited *York,* again noting that *Salcedo* arose from the misuse of an electrocardiograph. We agree that *Salcedo* is limited to its facts, to the same extent as are all cases that turn on the analysis of factual issues or the application of particular facts to the law. We believe, however, that the facts in the instant case are sufficiently analogous to those in *Salcedo* for us to decide the case at bar in accordance with that holding. Appellants' pleadings in the present case, taking as true the allegations pled, would state a claim involving the use or misuse of tangible personal property, an EKG machine, for which a private person would have been liable under law, and from

---

**4.** Specifically, the *Bossley* court reiterated that the Texas Tort Claims Act required that the injury be proximately caused by the condition or use of tangible property and noted that the court of appeals had incorrectly interpreted *Salcedo* when it stated that the property did not have to be the instrumentality of

harm. *Dallas County v. Bossley,* 968 S.W.2d 339, 342 (Tex.1998). The *Bossley* court criticized the court of appeals for holding that *Salcedo* only required "some involvement of property" and explained that *Salcedo* actually said that the involvement of property was "necessary", but not per se "sufficient". *Id.*

which a death resulted. We therefore find that the trial court has jurisdiction over the claims in this case under the provisions of TEX.CIV.PRAC. & REM.CODE § 101.021(2) (Vernon 1997).

## Conclusion

As the trial court had jurisdiction over this cause, it should have denied the plea to the jurisdiction. We therefore reverse the decision of the trial court and remand the case for further proceedings consistent with this opinion.[5]

---

**5.** Appellants also claimed that the alleged use or misuse of the EKG fell under the "motor-driven equipment" exception to the Texas Tort Claims Act. TEX.CIV.PRAC & REM.CODE § 101.021(1)(A)(Vernon 1997). As we have already determined that the trial court has jurisdiction of this suit under TEX.CIV.PRAC. & REM.CODE § 101.021(2) (Vernon 1997), we need not reach this question. *See* Tex. R.App.P. 47.1.